**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

SEP 02 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CHARLES DIRKS, | No. 09-56187 |
| Plaintiff - Appellee, | D.C. No. 2:07-cv-02664-GAF-FMO |
| v. | |
| JOE GRASSO; et al., | MEMORANDUM* |
| Defendants - Appellants. | |

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted December 9, 2010
Pasadena, California

Before: NOONAN, BERZON, and CALLAHAN, Circuit Judges.

Los Angeles County Sheriff's Department officers appeal the district court's

order denying in part their renewed motion for judgment as a matter of law in a suit

brought under 42 U.S.C. § 1983 by Professor Charles Dirks ("Dirks"). The

---

*    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

officers—Sargent Joe Grasso ("Grasso") and Deputies Ricky Baker and Darren Inana ("Baker" and "Inana")—brought the renewed motion after a jury deadlocked on Dirks's unlawful arrest and First Amendment retaliation claims.

We review the district court's denial of qualified immunity de novo, taking all disputed facts in the light most favorable to Dirks, the non-moving party. *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010). A Sheriff's Department employee recorded the events leading up to Dirks's arrest on video, and Dirks made an audio recording. Viewing and hearing the recordings, we agree with the district court that the officers are not entitled to qualified immunity.

1. The district court correctly concluded that the officers are not entitled to qualified immunity on Dirks's unlawful arrest claim. At the time of Dirks's arrest, it was clearly established that an officer must have probable cause to execute a warrantless arrest. *See Michigan v. Summers*, 452 U.S. 692, 699-700 (1981). Here, the officers could not have reasonably believed they had probable cause to arrest Dirks.

The officers first claim they had probable cause to arrest Dirks for disturbing the peace, a violation of California Penal Code §§ 415 and 415.5. At no point prior to Dirks's arrest could a reasonable officer have found, as required by California law, that there was a "clear and present danger of imminent violence," nor that the

intent of Dirks's communication was merely to disturb. *See In re Brown*, 510 P.2d 1017, 1023 (Cal. 1973). A reasonable officer would have known that Dirks intended to express his opposition to Grasso's attempt to meet with, interrogate, or fire a student Sheriff's Cadet, Yesenia Franco ("Franco"). Dirks in no way threatened the officers with violence, nor were his words likely to induce an immediate, violent response by the officers. *See United States v. Poocha*, 259 F.3d 1077, 1080-81 (9th Cir. 2001). Accordingly, a reasonable officer could not have concluded that there was probable cause to arrest Dirks for a violation of California Penal Code §§ 415 or 415.5.

The officers next claim they had probable cause to arrest Dirks for obstruction of justice, a violation of California Penal Code § 148. However, verbal criticism of police officers and refusal to respond promptly to police orders do not support probable cause for a violation of § 148. *See Mackinney v. Nielsen*, 69 F.3d 1002, 1005-07 (9th Cir. 1995); *People v. Bower*, 597 P.2d 115, 122 (Cal. 1979). A reasonable officer could not have concluded that there was probable cause to arrest Dirks for violating § 148 based on Dirks's failure to immediately leave the sheriff's substation, his objection to Grasso's attempt to meet with Franco, or his standing in the entrance to the substation while engaged in a discussion with Grasso.

3

Baker and Inana argue that even if probable cause did not exist, they are entitled to qualified immunity because they were acting pursuant to Grasso's orders. Baker and Inana cite no binding authority holding that following a superior's orders entitles officers to qualified immunity, and none exists. They personally observed all the events leading up to the arrest of Dirks. Based on the totality of facts and circumstances within their knowledge, Baker and Inana could not reasonably have believed that probable cause to arrest Dirks existed. *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020-21 (9th Cir. 2009).

2. Grasso is not entitled to qualified immunity on Dirks's First Amendment retaliation claim. Grasso argues that Dirks failed to prove that Grasso's desire to chill protected speech was a substantial or motivating cause of Dirks's arrest. *See Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999). At the time of Dirks's arrest, the First Amendment right to "verbally. . . oppose or challenge police action without thereby risking arrest" was clearly established. *City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987). Even assuming, without deciding, that the front lobby of a sheriff's substation is a nonpublic forum, Grasso's argument fails. Viewing the facts in the light most favorable to Dirks, Grasso arrested Dirks because he voiced his opposition to the planned interrogation or termination of Franco for her off-duty activities at a contentious student

4

government meeting.  The arrest was not a reasonable and viewpoint-neutral restriction on Dirks's speech.  *See Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 965 (9th Cir. 2002).  A reasonable officer could not have concluded that it was constitutional to arrest Dirks for expressing his opposition to Grasso's conduct.

**AFFIRMED.**

*Dirks v. Grasso, et al.*, No. 09-56187
Callahan, Circuit Judge

I dissent. I believe the officers in this case are entitled to qualified immunity from the claims made by Professor Dirks and would reverse.

Firstly, the officers are entitled to immunity on Dirks' unlawful arrest claim "unless [their] conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 813 (2009). Dirks argues that he had a constitutional right not to be arrested without probable cause. "The Supreme Court has 'recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present.'" *Rodis v. City and County of San Francisco*, 558 F.3d 964, 968-69 (9th Cir. 2009) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). Thus, the question is whether a reasonable officer *could have believed* probable cause to arrest existed. If so, the officers here are entitled to immunity. *Hunter*, 502 U.S. at 227.

The majority holds that no reasonable officer could have concluded there was probable cause to arrest. However, this case has already been tried to a jury,

1

and the jury deadlocked on the question of whether probable cause *actually* existed to arrest Dirks. The district court noted that "the fact that the jury in the first trial deadlocked on the question of probable cause directly supports the conclusion that reasonable minds could disagree regarding that issue." We need go no further than that. The fact that the jury was split on the question of whether probable cause actually existed establishes that a reasonable officer *could have believed* that he had probable cause to arrest, even if he turned out to be wrong. The district court noted this, but failed to appreciate the result that must necessarily follow: the officers here were entitled to qualified immunity. *Hunter*, 502 U.S. at 227.

Secondly, the officers are also entitled to immunity from Dirks' First Amendment claim. The deputies argue that a sheriff's substation lobby is traditionally a non-public forum, but apparently there was an official policy to hold this lobby open to the public for the purpose of lodging complaints. Therefore, the lobby must be considered a limited public forum,[1] *see Faith Center Church Evangelistic Ministries v. Glover*, 480 F.3d 891, 908 (9th Cir. 2007) *abrogated on*

---

[1] The sheriff's substation lobby was clearly opened to the public to transact law enforcement business, but has not been opened to the public for speech generally. It has been limited to certain categories of speech, namely complaints about department policies and procedures. "A limited public forum is a sub-category of the designated public forum, where the government opens a nonpublic forum but reserves access to it for only certain groups or categories of speech." *Faith Center*, 480 F.3d at 908 n.8.

2

*other grounds in Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365 (2008), and free speech in the lobby is not an unfettered right. "Restrictions governing access to a limited public forum are permitted so long as they are viewpoint neutral and reasonable in light of the purpose served by the forum." *Id.* The question is whether the deputies' "restriction," i.e., demanding that Dirks leave and arresting him when he didn't, was reasonable in light of the purpose served by the forum.

The Supreme Court has explained that "necessities of confining a forum to the limited and legitimate purposes for which it was created may justify the State in reserving it for certain groups or for the discussion of certain topics." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). Restrictions based on content are permissible if they preserve the purposes for which the forum was opened. *Id.* at 830. Grasso ordered Dirks to leave as soon as he determined that Dirks was not there to complain of the department's law enforcement policies – the reason for the lobby's limited public forum status – but rather to interject himself into the pending personnel matter between Grasso and his cadet. Thus, the restriction placed on Dirks' speech "preserve[s] the purpose for which the forum was opened," and is therefore reasonable. *Rosenberger*, 515 U.S. at 830. The restriction was viewpoint neutral in that Grasso cut off all speech regarding

3

personnel actions, regardless of which side they were on.[2] *See Faith Center*, 480 F.3d at 912.

Since the restriction on Dirks' speech was reasonable, content-based (rather than viewpoint-based), and preserved the purpose for which the forum was held open, his arrest was not a violation of Dirks' First Amendment freedom of speech rights. *Rosenberger*, 515 U.S. at 830. Therefore, the officers are entitled to immunity from Dirks' First Amendment claim as well as his false arrest claim. I respectfully dissent.

---

[2] The restriction might not have been viewpoint-neutral if, for example, it prohibited speech condemning the department's personnel actions, but allowed speech favorable to them.

4